Argued and submitted January 27, affirmed May 21, 1986

# NORTHWEST ACCEPTANCE CORPORATION,
*Appellant,*

*v.*

# McCLELLAN EQUIPMENT COMPANY,
*Respondent.*

## (A8410-05771; CA A35178 )

719 P2d 887

Barbee B. Lyon, Portland, argued the cause for appellant. With him on the briefs was Tonkon, Torp, Galen, Marmaduke & Booth, Portland.

Leon Simson, Portland, argued the cause for respondent. With him on the brief were Sandra L. Wald and Ransom, Blackman & Simson, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Plaintiff seeks a judicial declaration that its security interest in construction equipment leased by defendant to Erosion Control, Inc. (debtor) is superior to defendant's security interest in the same equipment; it also seeks injunctive relief and damages. The trial court dismissed plaintiff's complaint and entered judgment for defendant. The sole issue on appeal is whether defendant, by filing in good faith, in the wrong state, a financing statement covering the equipment, perfected its security interest in the equipment as against plaintiff, which had actual knowledge of the erroneous filing and of its contents before it perfected its own security interest in the equipment and advanced funds to the debtor.

The facts are undisputed. On May 7, 1982, defendant "leased" to the debtor eight pieces of heavy equipment in which it retained a security interest that was subject to the filing requirements of Article 9 of the UCC (ORS 79.1010 *et seq*). ORS 71.2010(37).[1] In accordance with the terms of the lease agreements, the equipment was delivered to the debtor in Wrangell, Alaska, where the debtor allegedly had a contract to build roads. On May 17 and 24, 1982, defendant, in a good faith attempt to perfect its security interest, filed financing statements in Alaska covering the equipment. It did not file in Oregon, where it was required to file in order to perfect its security interest. ORS 79.1030(3).[2]

---

[1] ORS 71.2010(37) provides:

" 'Security interest' means an interest in personal property or fixtures which secures payment or performance of an obligation. The retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer is limited in effect to a reservation of a 'security interest.' The term also includes any interest of a buyer of accounts or chattel paper which is subject to ORS 79.1010 to 79.5070. The special property interest of a buyer of goods on identification of such goods to a contract for sale under ORS 72.4010 is not a 'security interest,' but a buyer may also acquire a 'security interest' by complying with ORS 79.1010 to 79.5070. Unless a lease or consignment is intended as security, reservation of title thereunder is not a 'security interest' but a consignment is in any event subject to the provisions on consignment sales. Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security."

[2] ORS 79.1030(3) provides that the jurisdiction in which the debtor is located

In April, 1983, plaintiff, which previously had financed the debtor's purchase of other equipment, advanced additional funds to it and filed a financing statement in Oregon, under which it perfected a security interest in all of the debtor's equipment, including the equipment in question. The debtor then defaulted on its debts to both creditors and filed a voluntary petition in bankruptcy. This action ensued after defendant was granted relief from the resulting stay and recovered possession of the leased equipment.

On appeal, plaintiff contends that, because defendant failed to file in Oregon as required by ORS 79.1030(3) and 79.4010, the filing was ineffectual to perfect defendant's security interest. Accordingly, it argues that its perfected security interest has priority under ORS 79.3120(5)(a),[3] which provides the general rule that priority dates from the time when a filing covering the collateral is first made or the time when the security interest is first perfected, regardless of whether the party that files or perfects first has knowledge of a conflicting, preexisting security interest in the property. Defendant does not contest that general rule, but contends that the following exception to that rule, as provided in ORS 79.4010(2), is applicable:

"A filing which is made in good faith in an improper place or not in all of the places required by this section is nevertheless effective with regard to any collateral as to which the

governs "the perfection and the effect of perfection or nonperfection" of security interests in goods which are "mobile and which are of a type normally used in more than one jurisdiction, such as * * * road building and construction machinery * * *." A debtor is deemed located "at the debtor's place of business if the debtor has one, at the debtor's chief executive office if the debtor has more than one place of business, otherwise at the debtor's residence." Here, the error in filing apparently was caused by misinformation conveyed to defendant concerning the debtor's "location." On appeal, defendant concedes that the debtor was located in Oregon at the time of the transactions.

[3] ORS 79.3120(5)(a) provides:

"(5) In all cases not governed by other rules stated in this section (including cases of purchase money security interests which do not qualify for the special priorities set forth in subsections (3) and (4) of this section), priority between conflicting security interests in the same collateral shall be determined according to the following rules:

"(a) Conflicting security interests rank according to priority in time of filing or perfection. Priority dates from the time a filing is first made covering the collateral or the time the security interest is first perfected, whichever is earlier, provided that there is no period thereafter when there is neither filing nor perfection."

filing complied with the requirements of ORS 79.1010 to 79.5070 and is also effective with regard to collateral covered by the financing statement against any person who has knowledge of the contents of such financing statement."

It is agreed that defendant filed in Alaska in good faith and that plaintiff knew of the contents of that financing statement before it acquired and perfected its own security interest in the same collateral. Plaintiff contends, however, that, given the general policy of the UCC that priority is given to the first to perfect a security interest, the ORS 79.4010(2) exception should be construed to apply only to financing statements filed in an improper place in Oregon, not to those improperly filed in another state.

Determining the proper place to file a financing statement to perfect a security interest under the UCC requires consideration of myriad diffuse and complex sections of the code. As one authoritative treatise has stated:

"* * * Mistakes are inevitable in a system where the proper location for filing hinges upon such factors as classification of goods, location of the debtor, the proper time to determine status, place of business, and status of the debtor. The draftsmen wisely recognized that, despite their best intentions, pitfalls await the hapless traveler through the UCC. They provided a saving clause in 9-401(2), and judges should construe it in accord with its spirit." White and Summers, *Uniform Commercial Code* 951, § 23-15 (2d ed 1980).

We see no benefit to be derived from restricting the applicability of the "saving clause" to in-state filing errors; neither do we perceive any justification for doing so. The pitfalls that a creditor must avoid in order to determine the state in which a financing statement must be filed to perfect a security interest are at least as formidable as those that must be confronted in order to determine the proper place to file within a particular state. ORS 79.1030, which governs the perfection of security interests in multi-state transactions, is among the longest and most complicated sections of the code. We do not believe, therefore, that the drafters of the code, or the Oregon legislature which adopted it, intended the ORS 79.4010(2) exception to apply only to in-state filing errors. If that was the intention, they could have said so. The legislature provided two conditions to the applicability of the exception: improper filing in good faith and the subsequent creditor's

knowledge of the contents of that filing. Both conditions are satisfied here.

Plaintiff argues that it would be anomalous to apply the ORS 79.4010(2) exception to improper filings out of state when knowledge of a proper out of state filing under ORS 79.1030(3)(e)[4] is irrelevant. That statute, however, does not cover improper filings made in good faith; it relates to proper filings that have expired after the debtor's move to another state and the creditor's failure to perfect in the new jurisdiction. *See In Re Miller,* 14 UCC Rep Serv 1042 (Bankr D Or 1974). We perceive no anomaly, because the keystone of ORS 79.4010(2), a good faith attempt to perfect a security interest, is lacking.

Plaintiff also contends that applying the saving clause to interstate filing errors will impair the degree of certainty in determining priority intended to follow from the pure "race to file" aspects of the code. We perceive no reason why that certainty will be any more impaired than it would be by limiting the exception to improper filings in Oregon. Plaintiff had no obligation to search the records in Alaska, unless it was uncertain as to the proper place to file. However, plaintiff did conduct a search for relevant UCC filings and obtained a copy of the erroneously filed financing statement before it advanced funds secured by its blanket security interest. It then had a choice either to deal with defendant or to take its chances on priority. Its decision to extend the debtor's line of credit was, therefore, a fully informed choice and not one influenced by any uncertainty concerning the existence of defendant's claimed interest in the collateral. If it did consider the applicability of ORS 79.4010(2), the plain language of the statute[5] should have forewarned it of a

---

[4] ORS 79.1030(3)(e) provides:

"A security interest perfected under the law of the jurisdiction of the location of the debtor is perfected until the expiration of four months after a change of the debtor's location to another jurisdiction, or until perfection would have ceased by the law of the first jurisdiction, whichever period first expires. Unless perfected in the new jurisdiction before the end of that period, it becomes unperfected thereafter and is deemed to have been unperfected as against a person who became a purchaser after the change."

[5] Apparently, there were no decisions construing that section at the time of plaintiff's transaction. We are aware of only one case, decided later, *American Employers Ins. Co. v. American Sec. Bank,* 747 F2d 1493 (DC Cir 1984), dealing with that section. The court there assumed that it applied to out-of-state filings.